IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01284-PAB

REBECCA M. MARCHAND,

    Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Rebecca Marchand on May 25, 2018. Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

# I. BACKGROUND

On January 15, 2015, plaintiff applied for social security benefits under Title II of the Act. R. at 116. Plaintiff also filed a Title XVI application for supplemental security

---

[1] On June 4, 2019, Mr. Saul was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul will be substituted as defendant for Nancy A. Berryhill, former Acting Commissioner of Social Security.

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

income on May 26, 2015.  *Id.*  For both claims, plaintiff alleged a disability onset date of March 14, 2013.  *Id.*  After her claims were initially denied on May 4, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on January 30, 2017.  R. at 174, 180, 185, 1505.

On April 4, 2017, the ALJ issued a decision denying plaintiff's claim.  R. at 113.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date and had the following severe impairments: degenerative disc disease of the lumbar spine, status-post fusion, and rheumatoid arthritis.  R. at 118.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  R. at 127.  The ALJ additionally determined that plaintiff has several non-severe impairments: diabetes mellitus, mild diabetic retinopathy, cataracts, gastroparesis, hypothyroidism, headaches, trigger finger/carpal tunnel syndrome, episodes of pancreatitis, and right shoulder pain.  R. at 120.  Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> except she [can] lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; and stand and/or walk 6 hours in an 8-hour workday.  The claimant can frequently bend, stoop, and kneel; and occasionally crawl.  She can occasionally finger and should not lift above shoulder level.  The claimant should avoid exposure to unprotected heights as well as climbing ladders/ropes/scaffolds.

R. at 129.  The ALJ determined that plaintiff was unable to perform any past relevant work, but found that jobs existed in significant numbers in the national economy that plaintiff could perform.  R. at 138.

On April 30, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision. R. at 7. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises four objections to the ALJ's order: (1) the ALJ failed to fully incorporate and misinterpreted the testimony of Dr. Joseph Gaeta; (2) the ALJ failed to properly articulate why plaintiff's statements were inconsistent with the record; (3) the ALJ's RFC determination at step five did not include all of plaintiff's limitations; and (4) the ALJ failed to fully develop the record . Docket No. 17 at 5-7. Plaintiff concedes that the first issue is "the deciding factor" in her appeal. Docket No. 23 at 5. Nevertheless, the Court addresses each in turn.

First, the Court addresses the allegedly misinterpreted and improperly applied medical opinion. The ALJ gave great weight to the hearing testimony of Dr. Gaeta, a non-examining medical expert. R. at 137. Dr. Gaeta testified that plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently, but should not lift above shoulder level; can sit or walk for six hours in a eight-hour workday; can frequently bend, stoop, and kneel; can occasionally crawl and climb stairs; and can occasionally

use hands for fine manipulation, but can grasp, carry, pull, and lift with her hands.  R. at 1512.  In response to the ALJ asking Dr. Gaeta whether plaintiff would have any gross handling limitations, Dr. Gaeta testified "I don't think she would really."  R. at 1513.  Dr. Gaeta testified that use of some types machinery could be limited by her hands, but he was not sure what machinery because he is not a vocational expert.  R. at 1514.  The ALJ asked a clarifying question, whether plaintiff's limitations in machinery were related to Dr. Gaeta's earlier testimony about "intricate detail type of thing," to which Dr. Gaeta responded yes.  *Id.*  Dr. Gaeta said that plaintiff's hand limitations would not create a hazard in using any type of machinery.  *Id.*

Plaintiff argues that the ALJ misinterpreted Dr. Gaeta's testimony to conclude that plaintiff had no handling limitations and that this misinterpretation warrants reversal and remand.  Docket No. 17 at 27-28.  However, plaintiff is incorrect (1) that Dr. Gaeta testified that plaintiff had handling limitations and (2) that the ALJ failed to fully incorporate Dr. Gaeta's testimony in the RFC.

First, Dr. Gaeta clearly stated that plaintiff would not have gross handling limitations and could grasp, pull, lift, and carry without limitation.  R. at 1512-13.  The additional limitations Dr. Gaeta discussed involved plaintiff's potential difficulty operating machines that require fine motor skills.  R. at 1514.  Thus, the ALJ's determination that plaintiff had no gross handling limitations, R. at 137, is consistent with Dr. Gaeta's testimony.  Second, the RFC states that plaintiff can "occasionally finger."  R. at 129.  Given that Dr. Gaeta testified that plaintiff would have difficulty with intricate detail due to her arthritis, R. at 1514, the limitation of occasional fingering clearly incorporates Dr. Gaeta's testimony.  As a result, plaintiff's argument that the ALJ failed to properly

include Dr. Gaeta's limitations in the RFC is proved wrong by the RFC itself.

Furthermore, plaintiff does not argue that the ALJ's determination regarding handling is otherwise unsupported, just that the ALJ misinterpreted and failed to apply Dr. Gaeta's testimony. However, even if the ALJ did misinterpret the testimony – which the Court already determined she did not – plaintiff provides no support or argument why this lone statement by one medical examiner demonstrates that the ALJ's conclusion on handling is not supported by substantial evidence. The ALJ discussed and analyzed numerous medical reports demonstrating that plaintiff had mild arthritis symptoms, only scattered tenderness, mild synovitis, and normal range of motion. *See* R. at 134; *see also* R. at 505 (noting a lack of "swollen joints" but "scattered tenderness"); R. at 506 ("[M]ild synovitis at the right 2nd PIP."); R. at 511 (stating that plaintiff has "normal range of motion"); R. at 729 (finding "normal range of motion"); R. at 1154 (noting that plaintiff has "normal range of motion" but "exhibits tenderness"). As of August 2016, she had "marked improvement" with no pain and minimal morning stiffness, with plaintiff stating that she was "the best I have ever felt." R. at 1489-90. In September 2016, she was negative for joint swelling, exhibited no tenderness, normal sensation, and normal strength. R. at 1491-92. Thus, even if the ALJ misinterpreted Dr. Gaeta's testimony, there is substantial evidence in the record for the ALJ's handling conclusion.

Second, the Court addresses plaintiff's argument regarding the ALJ failing to explain alleged inconsistencies between plaintiff's statement and the record. Plaintiff argues that the ALJ failed to explain why plaintiff's statements were inconsistent with the record, but primarily discusses plaintiff's statements at the hearing without a

detailed discussion of the ALJ's analysis of the medical record. Plaintiff states that she testified that brushing her teeth, showering, and writing caused pain in her hand, Docket No. 17 at 29, and that she could do some light cleaning. *Id.* Plaintiff further contends that there is no evidence that plaintiff's caring for her grandchildren and mother requires lifting, standing, walking, or using her hands, or that plaintiff's improvement in back pain over time is in any way inconsistent with her testimony. *Id.* at 29-30. What plaintiff fails to do, however, is compare this testimony with the ALJ's analysis.

In analyzing plaintiff's testimony in regards to her arthritis, the ALJ noted what the Court noted above: plaintiff had normal range of motion, mild tenderness, and mild synovitis. R. at 133. As to her back pain, the ALJ concluded that plaintiff has a normal gait and does not need to use an assistive device. *Id.*; *see also* R. at 729 (finding gait within normal limits without assistive devices); R. at 769 (same); R. at 991 (same); R. at 1404 (stating gait is "normal"); R. at 1420 (same). Finally, in regards to plaintiff's testimony regarding her activities of daily living, the ALJ cited record evidence that plaintiff walks every day and takes care of her grandchildren and mother. *See* R. at 132; *see also* R. at 517 (stating that plaintiff is "walking every day"); R. at 1490 (reporting that plaintiff's cold was from taking care of her grandchildren); R. at 1541 ("I do the cooking, I do the cleaning, I pay all the bills"). While plaintiff is correct that there is no evidence that these activities require lifting or standing, the issue is not whether those activities of daily living demonstrated plaintiff's ability to lift or carry but, given her activities of daily living and the other evidence in the record, whether plaintiff's reporting of symptoms comported with the available evidence. Contrary to plaintiff's assertion, as demonstrated by the evidence cited above, ALJ's discounting of plaintiff's testimony is

supported by substantial evidence in the record, particularly given the Court's deference to the ALJ on issues of credibility. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

Third, the Court addresses plaintiff's argument that the ALJ failed to include limitations on eyesight, mental health, and memory in the RFC determination. The Court finds this argument unpersuasive. As plaintiff notes, the ALJ considered these limitations in her RFC discussion and found them to be non-severe. *See* Docket No. 17 at 31; R. at 119-20. However, the ALJ noted that there was a decided lack of clinical medical evidence demonstrating the severity of her limitations or that those limitations significantly impaired plaintiff. As to plaintiff's traumatic brain injury in 2003, the ALJ found that there is "no medical evidence that includes the required signs, symptoms, or diagnostic finding to establish this condition." R. at 119. Plaintiff cites to no evidence in the record to counter this conclusion. *See* Docket No. 17 at 33 (citing R. at 494 (noting plaintiff's own recitation of the issues resulting from the 2003 car accident)). Relatedly, plaintiff argues that her memory issues should have been included in the record and that one doctor's opinion regarding her substance use does not demonstrate that she does not have memory problems. Docket No. 17 at 33-34. While plaintiff cites to the report of Dr. William Graham as evidence of her memory problems, *id.* at 34, other evidence in the record demonstrates that her memory issues were not as limiting as she suggests. *See* R. at 437 (noting that "attention and concentration was sufficient for interview purposes"); R. at 478 (finding "intact" attention and concentration); R. at 1257 (concluding that there was no impairment in plaintiff's ability to concentrate and complete daily and work-related tasks). Thus, there is substantial evidence in the

record to support the ALJ's decision to omit limitations as to plaintiff's brain injury, memory, and concentration from the RFC determination.

As to plaintiff's eyesight, plaintiff argues that her mild diabetic retinopathy and cataracts resulted in impairment and should have been included in the RFC limitations.[3] *See* Docket No. 17 at 32. However, the ALJ analyzed medical records from 2015 and 2016. A January 8, 2015 eye examination showed early evidence of cataracts, no retinopathy, and 20/20 to 20/40 vision. *See* R. at 120; *see also* R. at 1173 ("[N]o retinopathy."); R. at 1174-75 (noting 20/20 to 20/40 vision depending on the eye). Additionally, a vision examination on May 3, 2016 revealed no evidence of retinopathy, her cataracts were not clinically significant, and that plaintiff did not have ocular impairment. R. at 713-714 (finding "normal" visual field and "not clinically significant" impairments). Eye examinations from later in 2016 resulted in a similar diagnosis. *See* R. at 1083-86 (noting, among other things, that her cataracts were "approaching visual significance"); R. at 1497 (finding "mild retinopathy"). While plaintiff cites to an examination where she "complained of blurry vision," Docket No. 17 at 32, the exam where she complained of her vision found only "mild retinopathy." R. at 1497. Plaintiff's testimony at the hearing and her self-reporting does not vitiate the substantial evidence in the record demonstrating that she was not visually impaired.

Fourth, plaintiff argues that the ALJ failed to properly develop the record by refusing to admit medical records from prior social security claims and further erred by giving weight to a consultative examiner from one of the prior claims. Docket No. 17 at

---

[3] Plaintiff states that she underwent cataract surgery in August and September of 2017. Docket No. 17 at 32.

36-37. An ALJ is "not required to 'exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment.'" *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)). Thus, the ALJ's "duty to develop the record is limited to fully and fairly developing the record as to material issues." *Hawkins*, 113 F.3d at 1168 (citations, quotations, and alterations omitted). While plaintiff contends that the missing records "resulted in an incomplete record [] and resulted in mistakes of fact," Docket No. 17 at 36, the relevant question is whether the medical records contained in plaintiff's prior files are material to resolving her current claim. The Court finds that the prior records were not material.

As described above in resolving plaintiff's argument regarding the ALJ's gross handling determination, there was substantial evidence in the record that plaintiff's arthritis limitations were not as significant as she suggests. *See* R. at 505 (noting a lack of "swollen joints" but "scattered tenderness); R. at 506 ("[M]ild synovitis at the right 2nd PIP."); R. at 511 (stating that plaintiff has "normal range of motion"); R. at 729 (finding "normal range of motion"); R. at 1154 (noting that plaintiff has "normal range of motion" but "exhibits tenderness"). Plaintiff does not explain how records from a 2011 claim and other records ending in August 2013 are material to resolving her claim. Plaintiff suggests that the impairments from the March 2013 ALJ decision provide a "baseline of limitations," Docket No. 17 at 35, but fails to explain why a baseline was needed to determine her limitations in a more recent time period. While plaintiff suggests there are nine months of treatment notes missing, that does not demonstrate that the missing or excluded evidence is material given the extensive, recent treatment notes

demonstrating that plaintiff had normal range of motion and mild tenderness.

Plaintiff also suggests that the ALJ improperly analyzed an opinion of consultative examiner Dr. Elsner from plaintiff's previous claim, even though the ALJ failed to admit that medical file. But this is a misreading of the ALJ's analysis. Rather, the ALJ stated that Dr. Gaeta's opinion was consistent with Dr. Elsner's previous opinion. R. at 137. The ALJ noted that Dr. Elsner's opinion was "prior to the alleged onset date in this case and during a period that has already been adjudicated." *Id.* Rather than utilizing Dr. Elsner's opinion, which the ALJ stated was not from the relevant period, the ALJ was actually analyzing Dr. Gaeta's opinion.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED November 30, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge